## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FARSHID M. ZADEH, SAMANEH
RAGHIMI, MOHAMED IYE, and SAIDO
A. ABDILLE,

                   Plaintiffs,

    vs.

DONALD J. TRUMP, President of the
United States of America; UNITED
STATES OF AMERICA; UNITED
STATES DEPARTMENT OF
HOMELAND SECURITY; UNITED
STATES CITIZENSHIP AND
IMMIGRATION SERVICES; UNITED
STATES DEPARTMENT OF STATE; U.S.
CUSTOMS AND BORDER PATROL;
DANA J. BOENTE, Acting Attorney
General of the United States; JOHN
KELLY, Secretary of the Department of
Homeland Security; LORI SCIALABBA,
Acting Director of U.S. Citizenship and
Immigration Services; KEVIN K.
McALEENAN, Acting Commissioner of
U.S. Customs and Border Patrol,


                   Defendants.

Civil Action No.

**COMPLAINT**

## INTRODUCTION

This case seeks emergency declaratory and injunctive relief in response to

President Donald Trump's unconstitutional and unlawful executive order barring entry

into the United States by nationals of seven majority-Muslim countries.

Plaintiff ZADEH is a lawful permanent resident of the United States. Plaintiff RAGHIMI is a citizen of Iran and holds a valid Irani passport; she is married to Plaintiff ZADEH. Plaintiff IYE is a United States Citizen and resident of the United States. Plaintiff ABDILLE is a citizen of Somalia and holds a valid Somali passport; she is married to Plaintiff IYE. Plaintiffs ZADEH and IYE both filed I-130 and obtained approved Petitions for alien relatives with United States Citizenship and Immigration Services ("USCIS") with respect to Plaintiffs RAGIHMI and ABDILLE.

After navigating and fully complying with all of the rigorous procedural requirements and security background checks that make up USCIS's petitioning process and the STATE DEPARTMENT'S visa issuance process, Defendant UNITED STATES OF AMERICA—by and through the collective actions of all other named Defendant entities and individuals acting in their official capacities, as well as their agents, servants, officers, employees and legal counselors, and all persons acting in participation or concert with them or under their direction and/or command—determined that Plaintiffs do not pose a security threat to the United States. Accordingly, THE STATE DEPARTMENT issued Plaintiffs RAGHIMI and ABDILLE valid immigrant visas to enter the United States. Ms. RAGHIMI obtained her visa in Ankara, Turkey on November 18, 2016. Ms. ABDILLE obtained her visa on January 18, 2017.

On Friday, January 27, 2017, newly elected Defendant President DONALD J. TRUMP (hereinafter referred to interchangeably as "President" and "TRUMP") signed an Executive Order entitled "Protecting the Nation from Foreign Terrorist Entry into the United States" (the "Executive Order"). In the wake of the execution of the Executive

Order, Defendants have announced or have been directed to unlawfully implement a moratorium on refugees and valid visa holders from seven countries from entering the United States: Iran, Iraq, Libya, Somalia, Sudan, Syria and Yemen (the "seven countries"). The Executive Order is unlawful as applied to Plaintiffs, as it violates their rights under (1) the Equal Protection Clause of the Fourteenth Amendment (which applies to the federal government through the Due Process Clause of the Fifth Amendment, *see Bolling v. Sharpe*, 347 U.S. 497 (1954)); (2) the Establishment Clause of the First Amendment; (3) the Due Process Clause of the Fifth Amendment; and (4) the Administrative Procedure Act, 5 U.S.C. §§ 500, *et seq.*

Plaintiffs respectfully request that this Court grant the relief being sought herein to redress the extreme hardship and irreparable injury that Plaintiffs have suffered and will continue to suffer because of Defendants' unlawful actions.

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction pursuant to the following provisions: 28 U.S.C. § 1331 (because questions of federal law are present); 5 U.S.C. § 701, *et seq.* (Administrative Procedure Act), and 28 U.S.C. § 2201 (Declaratory Judgment Act).

2.     This Court also has jurisdiction to issue a writ of mandamus to compel agency action under 28 U.S.C. § 1361 as Plaintiffs' claims are against officers and employees of the United States and agencies thereof.

3.     There are no administrative remedies available to Plaintiffs to redress their grievances described in this Complaint. This action challenges (1) Defendants'

procedural policies, practices, interpretations of law and their actions or failures to act; and (2) Defendants' substantive policies and practices insofar as those policies and practices violate Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment (which applies to the federal government through the Due Process Clause of the Fifth Amendment, *see Bolling v. Sharpe*, 347 U.S. 497 (1954)), the Fifth Amendment Due Process Clause, the Administrative Procedure Act, and other relevant provisions of law. This action does not challenge the mere discretionary granting or denial of individual petitions or applications. Therefore, the jurisdictional limitations under 5 U.S.C. § 701(a)(2) and 8 U.S.C. § 1252 do not apply.

4.      Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(e) because the Defendants named herein reside in the district.

## STATEMENT OF FACTS

**Plaintiffs**

5.      Plaintiff Farshid ZADEH is a lawful permanent resident of the United States. He currently resides in Minnesota. His wife, Plaintiff Sameneh RAGHIMI, was recently a Professor of Industrial Design at Azad University in Mashadd, Iran, before resigning her position to move to the United States.  They have been married since November 2013.  They have seen each other only intermittently since their wedding, as ZADEH lives and works in the United States and RAGHIMI had lived and worked in Iran.

6.     RAGHIMI petitioned for an I-130 immigrant visa.   RAGHIMI'S I-130 Petition was approved. Plaintiff ZADEH was at all times relevant the husband of Plaintiff RAGHIMI—the principal beneficiary on an I-130 Petition for Alien Relative.

7.     RAGHIMI then underwent, adhered to and fully complied with Defendants' rigorous policies, procedures and security background checks, including but not limited to: payment of all relevant fees to USCIS, National Visa center and the State Department; providing fingerprints and biometric data to the Department of State; providing all the requisite documentation required by Defendants; and an interview of RAGHIMI at the United States Embassy in Ankara, Turkey by Defendant U.S. DEPARTMENT OF STATE.

8.     Issuance by Defendant U.S. DEPARTMENT OF STATE of an immigrant visa to an applicant for such a visa authorizes the visa's holder to enter the United States as a lawful permanent resident, also known as a green card holder.

9.     Lawful Permanent Residents have the same rights, responsibilities and protections as United States Citizens, save some exceptions, such as the right to vote in state and federal elections.

10.     On November 18, 2016 Defendant U.S. DEPARTMENT OF STATE issued RAGHIMI an F21 immigrant visa to enter the United States as a lawful permanent resident.

11.     In anticipation of beginning a new life with her husband in the United States, RAGHIMI quit her job as a professor at Azad University.   She terminated her

housing lease, and sold her car and many of her personal belongings in preparation for the move.

12.     ZADEH and RAGHIMI left Tehran, Iran on January 27, 2017, for the first leg of their flight to the United States.  While they were in flight, Defendant TRUMP signed the Executive Order.  When the couple landed in Amsterdam, Netherlands, a U.S. Customs or Immigration agent notified RAGHIMI that she would not be allowed to fly to the United States.  ZADEH was informed, on the other hand, that he could return to the United States.

13.     Given the cost of the international tickets, and the need for ZADEH to return to the United States so that he could complete the last requirements to make him eligible for citizenship, the couple quickly decided that ZADEH should continue on and RAGHIMI would return to Tehran alone.  ZADEH and RAGHIMI rushed to make arrangements for RAGHIMI to return to Tehran before ZADEH's flight left for the United States.  The couple had just a brief moment to hug and say a tearful farewell before ZAHED boarded his plane and left RAGHIMI behind.

14.     Plaintiff Mohamed IYE was born in Somalia and became a U.S. citizen in 2010.  He married Plaintiff Saido ABDILLE in Nairobi, Kenya, in September 2011.  ABDILLE and IYE have two children together.  Both children are U.S. Citizens.  One child, Ni.S., was born in July 2012.  The other, Na.S., was born in November 2014.  Ni.S. has microcephaly and requires special medical care.  ABDILLE, Ni.S., and Na.S. live together in Nairobi, Kenya.

15.   IYE was at all times relevant the husband of ABDILLE—the principal beneficiary on an I-130 Petition for Alien Relative.  In February 2012, IYE filed the I-130 Petition for ABDILLE to come to the United States on an immigrant visa. ABDILLE'S I-130 Petition was approved.

16.   ABDILLE then underwent, adhered to and fully complied with Defendants' rigorous policies, procedures and security background checks, including but not limited to: payment of all relevant fees to USCIS, National Visa center and the State Department; providing all the requisite documentation required by Defendants; providing fingerprints and biometric data to the Department of State; and an interview of Plaintiff ABDILLE at the United States Embassy in Nairobi, Kenya, by Defendant U.S. DEPARTMENT OF STATE.

17.   It took almost 5 years of screening and vetting, but on January 18, 2017, Defendant U.S. DEPARTMENT OF STATE issued ABDILLE an IR1 visa to enter the United States as a lawful permanent resident.  Plans were made for ABDILLE, Ni.S., and Na.S., to leave Nairobi and join IYE in Minnesota, and a trip was booked for February 4, 2017.

18.   On January 28, 2017, in the wake of the Executive Order, ABDILLE went to the Nairobi offices of KLM Airlines to confirm that she and her children would be allowed to travel to the U.S.  They were informed that, because of the Executive Order, they would not be able to board their February 4, 2017 flight to Amsterdam.

19.   The lease on ABDILLE's apartment terminates on February 4, 2017, and the family has nowhere to go after that date.  Neither ABDILLE nor IYE have any other

family living in Nairobi. The cost of a hotel will be prohibitive for the family. Further, Ni.S. desperately needs medical care for her condition. She cannot receive the care she needs in Nairobi.

20.    As a result of the Executive Order and restriction on entry into the United States by ABDILLE, Defendants are refusing to allow ABDILLE to enter the United States.

**Defendants**

21.    Defendant UNITED STATES OF AMERICA is the sovereign entity with the power and constitutional mandate to adhere to and enforce the provisions of the United States Constitution and all federal laws and regulations of the United States of America, including those provisions of the Constitution and laws and regulations of the United States herein enumerated.

22.    Defendant DEPARTMENT OF HOMELAND SECURITY ("DHS") is the overarching Federal Agency of the Executive Branch of the United States Government that has been delegated the authority over, *inter alia*, (1) visa applications and applications to adjust status, including coordinating the timely completion of background checks with the Federal Bureau of Investigation; (2) immigration generally; (3) customs; and (4) border security.

23.    Defendant UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES ("USCIS") is a bureau within DHS, and is the agency charged with direct and immediate responsibility for the proper and timely adjudication of visa applications and applications to adjust status.

24.     Defendant U.S. DEPARTMENT OF STATE is the Agency responsible for the international relations of the United States and consular visa processing.

25.     Defendant U.S. CUSTOMS AND BORDER PATROL ("CBP") is the Agency responsible for enforcing United States regulations, including customs and immigration.

26.     Defendant President DONALD J. TRUMP is the President of the United States of America.  Defendant President TRUMP is the official of the Executive Branch of Defendant UNITED STATES OF AMERICA who possesses the authority to execute lawful executive orders, and who did in fact sign and execute the above-described Executive Order on January 27, 2017.  This action is brought against Defendant TRUMP in his official capacity.

27.     Defendant DANA J. BOENTE is the Acting Attorney General, and this action is brought against him in his official capacity.  The Attorney General is the head of the United States Department of Justice, which is concerned with legal affairs of the United States of America.

28.     Defendant JOHN KELLY is the Secretary of the Department of Homeland Security ("DHS"), and this action is brought against him in his official capacity.  DHS is the agency responsible for implementing the Immigration and Nationality Act ("INA").  Defendant JOHN KELLY is generally charged with the enforcement of the INA and is responsible for implementing the provisions of the INA.  Defendant JOHN KELLY is further authorized to delegate such powers and authority to subordinate DHS employees.  *See* 8 U.S.C. § 1103(a); 8 C.F.R. § 2.1.

29.     Defendant LORI SCIALABBA is the Acting Director of USCIS, an agency within and under the purview of DHS, to which the Secretary's authority has, in part, been delegated, and this action is being brought against her in her official capacity. Defendant LORI SCIALABBA, as Acting Director of USCIS, is subject to the Secretary's supervision. Defendant Acting Director LORI SCIALABBA is generally charged with the overall administration of immigration benefits and immigration services. *See* 8 C.F.R. §100.2(a).

30.     Defendant KEVIN K. McALEENAN is the Acting Commissioner of United States Customs and Border Patrol and this action is being brought against him in his official capacity.

**The Executive Order**

31.     Defendant TRUMP signed the above-described Executive Order on January 27, 2017. The Executive Order purports to "protect the American people from terrorist attacks by foreign nationals admitted to the United States."

32.     The Executive Order is based on a purported threat of terrorism at the hands of foreign nationals, and, pursuant to the purported threat, imposes substantial modifications to the policies and procedures governing the admission of non-citizens to the United States:

a.     A 120-day moratorium on the United States Refugee Resettlement Program ("USRAP");

b.      An indefinite suspension of Syrian national refugees from entering the United States, and the substantial reduction of all refugee entrants to the United States from over 100,000 to no more than 50,000 for fiscal year 2017;

c.      The 90-day suspension of "immigrant and nonimmigrant entry into the United States of aliens from countries referred to in section 217(a)(12) of the INA, 8 U.S.C. 1187(a)(12)" (because such entry would purportedly "be detrimental to the interests of the United States"). *See* Executive Order § 3(c).

33.    Nations meeting the criteria listed at INA Section 217(a)(12), 8 U.S.C. Section 1187(a)(12), include the following seven nations: Iran, Iraq, Libya, Somalia, Sudan, Syria and Yemen (the "seven countries").  Executive Order Section 3(c) suspends entry into the United States by non-United States Citizen "immigrant[s] and nonimmigrant[s]" for 90 days.

34.    The moratorium on and curtailment of refugees, as well as the freeze imposed on immigrants and nonimmigrants deriving from the seven countries from entering the United States was made by proclamation alone, and is not based on any quantitative or qualitative analysis.

35.    The United States Department of Justice Office of Legal Counsel ("OLC") appears to have subjected the Executive Order to only the most bare-bones (if any) review for its constitutionality. The January 27, 2017 OLC Memorandum evaluating the Executive Order is slightly more than one page in length.  It catalogues the purported aims of the Executive Order and then concludes, baldly, that "[t]he proposed Order is approved with respect to form and legality."

36.    Notwithstanding this bare-bones approval from OLC, on January 30, 2017, Acting Attorney General Sally Q. Yates issued a written statement regarding the Order, which explained: "My responsibility is to ensure that the position of the Department of Justice is not only legally defensible, but is informed by our best view of what the law is after consideration of all the facts.  In addition, I am responsible for ensuring that the positions we take in court remain consistent with this institution's solemn obligation to always seek justice and stand for what is right.  At present, I am not convinced that the defense of the Executive Order is consistent with these responsibilities, nor am I convinced that the Executive Order is lawful.  Consequently, for as long as I am the Acting Attorney General, the Department of Justice will not present arguments in defense of the Executive Order, unless and until I become convinced that it is appropriate to do so."

37.    TRUMP fired Acting Attorney General Yates on January 30, 2017, just a few hours after Yates issued the written statement criticizing the Executive Order and calling its legality into question.

38.    On February 1, 2017, in response to the "reasonable uncertainty" and "confusion" regarding the scope of the Executive Order, Donald F. McGahn, Counsel to the President, issued a "Memorandum to the Acting Secretary of State, the Acting Attorney General, and the Secretary of Homeland Security," which purported to provide "Authoritative Guidance" on the Executive Order.

39.    McGahn's Memorandum stated: "Section 3(c) of the Executive Order entitled "Protecting the Nation from Foreign Terrorist Entry into the United States" (Jan.

27, 2017) suspends for 90 days the entry into the United States of certain aliens from countries referred to in section 217(a)(12) of the Immigration and Nationality Act (INA), 8 U.S.C. 1187(a)(12). Section 3(e) of the order directs the Secretary of Homeland Security, in consultation with the Secretary of State, to submit to the President a list of countries recommended for inclusion on a Presidential proclamation that would prohibit the entry of certain foreign nationals from countries that do not provide information needed to adjudicate visas, admissions, or other benefits under the INA. I understand that there has been reasonable uncertainty about whether those provisions apply to lawful permanent residents of the United States. Accordingly, to remove any confusion, I now clarify that Sections 3(c) and 3(e) do not apply to such individuals. Please immediately convey this interpretive guidance to all individuals responsible for the administration and implementation of the Executive Order."

40.    In other words, individuals currently holding Green Cards are exempt from the Executive Order. Individuals holding immigrant visas, who will be eligible for and receive Green Cards simply by entering the United States pursuant to their validly issued visas, are not exempt from the Executive Order. McGahn's Memorandum lacks any rationale for distinguishing between these two groups.

41.    Defendant President DONALD J. TRUMP, both in the past and very recently, promised that as President of the United States he would ban all Muslims from entering this country. The Executive Order and concomitant proclamatory seven-country freeze has a disparate effect on Muslims. The Executive Order is based on discrimination and animus against Muslims.

42.     On or about December 7, 2015, Defendant, and then-presidential candidate TRUMP, referring to himself in the third person, publicly stated: "Donald J. Trump is calling for a total and complete shutdown of Muslims entering the United States . . . ."

43.     TRUMP's campaign surrogate Rudolph Giuliani confirmed that the Executive Order is meant to serve as a Muslim ban, with the Order's seven-country scope acting as a fig leaf to obscure the Order's obvious unconstitutionality.

44.     In a January 28, 2017 interview with Fox News, Giuliani was asked, "How did the president decide the seven countries?"  He responded, "I'll tell you the whole history of it.  So when [Trump] first announced it, he said, 'Muslim ban.' He called me up. He said, 'Put a commission together. Show me the right way to do it legally.' " " Giuliani explained that he convened a "whole group of other very expert lawyers on this," including former U.S. attorney general Michael Mukasey, Rep. Mike McCaul (R-Tex.) and Rep. Peter T. King (R-N.Y.).  "And what we did was, we focused on, instead of religion, danger — the areas of the world that create danger for us . . . Which is a factual basis, not a religious basis.  Perfectly legal, perfectly sensible.  And that's what the ban is based on.  It's not based on religion.  It's based on places where there are substantial evidence that people are sending terrorists into our country."

45.     The Executive Order further prioritizes admittance into the United States of religious minorities deriving from and suffering religious persecution in the seven enumerated countries. *See* Executive Order §§ 5(b), (e).

46.     No similar prioritization was included in the Executive Order or otherwise announced for Muslim minorities in countries with a non-Muslim religious majority (*e.g.*, Myanmar, Israel, China, etc.).

47.     The Executive Order affords preferential treatment to Christians, while denying entry into the United States by valid visa holders or visa applicants in seven Muslim-majority countries, further demonstrating that the Order is based on religious discrimination and/or animus toward and against (a) United States Citizens pursuing family reunification with family alien relatives who are Muslim; and (b) valid United States-visa holding Muslim citizens of the seven countries.

48.     TRUMP has explicitly stated that this prioritization provision of his Executive Order is for the benefit of Christian minorities in Muslim-majority countries. On or about January 29, 2017, an interview between TRUMP and David Brody of the Christian Broadcasting Network aired.  During the interview, Mr. Brody asked TRUMP whether he viewed persecuted Christians overseas as a "priority" for refugee status, to which TRUMP unequivocally replied: "Yes."  *See also* Michael D. Shear & Helene Cooper, *Trump Bars Refugees and Citizens of 7 Muslim Countries*, N.Y. Times (Jan. 27, 2017), ("[President Trump] ordered that Christians and others from minority religions be granted priority over Muslims."); Carol Morello, *Trump Signs Order Temporarily Halting Admission of Refugees, Promises Priority for Christians*, Wash. Post (Jan. 27, 2017).

49.     The Executive Order has left Plaintiffs without any administrative options for relief.  As a result, Plaintiffs have been forced to commence suit against Defendants

to seek an Injunction halting Defendants' enforcement of the Executive Order and/or a writ of mandamus compelling Defendants to allow RAGHIMI and ABDILLE to enter the United States on their valid visas.

## COUNT ONE
## FIFTH AMENDMENT – EQUAL PROTECTION

50.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

51.    The Executive Order discriminates against Plaintiffs because of their national origin and religion, in violation of the Constitution's guarantee of Equal Protection.

52.    Equal Protection requires that similarly-situated individual be treated the same under the law.  The Executive Order discriminates on its face.  It targets exclusively residents of Muslim-majority countries while creating a gerrymandered preference for Christian minorities.  Moreover, the Executive order was motivated by animus towards members of the Muslim faith and affects such members almost exclusively. As a consequence, the Executive Order violates Plaintiffs' right to equal protection of the law.

## COUNT TWO
## FIRST AMENDMENT – ESTABLISHMENT CLAUSE

53.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

54.    The First Amendment's Establishment Clause erects "a wall of separation between church and State." *Everson v. Bd. of Educ.*, 330 U.S. 1, 15-16 (1947) (quotation marks omitted).  Its "clearest command" is "that one religious denomination cannot be

officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982).  This prohibits government action that discriminates among religions unless such action is narrowly tailored to serve a compelling government interest. *Id.* at 246-47, 254-55; *Awad v. Ziriax*, 670 F.3d 1111, 1130-31 (10th Cir. 2012).

55.   The Executive Order violates the Establishment Clause by creating a preference for one religion and explicitly disfavoring another.  The Executive Order is not narrowly tailored to serve any compelling interest; indeed, the Order was motivated by anti-Muslim animus and serves no permissible purpose whatsoever. As a result, the Executive Order violates the Establishment Clause.

**COUNT THREE**
**FIFTH AMENDMENT – DUE PROCESS CLAUSE**

56.   Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

57.   All non-citizens entering the United States are entitled to the protections of the Due Process Clause of the Fifth Amendment. *See, e.g.*, *Dia v. Ashcroft*, 353 F.3d 228, 239 (3d Cir. 2003) (non-citizens must be afforded those statutory rights granted by Congress and "[m]inimum due process rights attach to statutory rights"); *Landon v. Plasencia*, 459 U.S. 21, 32 (1982).

58.   The Executive Order violates Due Process by prohibiting Plaintiffs, who have been thoroughly vetted and approved and complied with all requirements for entry under United States immigration law.   The Order fails to provide even minimal

procedural safeguards, instead arbitrarily blocking a vast swath of visa-holders, permanent residents, and refugees on the basis of their national origin and religion.

## COUNT FOUR
## ADMINSITRATIVE PROCEDURE ACT

59.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

60. The Immigration and Nationality Act forbids discrimination in issuance of visas based on a person's race, nationality, place of birth, or place of residence.  8 U.S.C. § 1152(a)(1)(A).

61.    Defendants actions in preventing Plaintiffs' travel into the United States were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of APA § 706(2)(A); contrary to constitutional right, power, privilege, or immunity, in violation of APA § 706(2)(B); in excess of statutory jurisdiction, authority or limitations, or short of statutory right, in violation of APA § 706(2)(C); and without observance of procedure required by law, in violation of § 706(2)(D).

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs pray that this Court grant the following relief:

(1) issue an injunction and/or writ of mandamus ordering Defendants to permit Plaintiffs lawful entry into the United States pursuant to the terms of their immigrant visas;

(2) enter a judgment declaring that Defendants' refusal to admit Plaintiffs to the United States is and will be unauthorized by statute and contrary to law;

(3) declare that Sections 3(c), 5(a)-(c), and 5(e) of the Executive Order are unauthorized by and contrary to the Constitution and laws of the United States;

(4) enjoin Defendants from implementing or enforcing Sections 3(c), 5(a)-(c), and 5(e) of the Executive Order; and

(5) grant any other and further relief that this Court may deem fit and proper.

Dated: February 3, 2017

**COHEN MILSTEIN SELLERS & TOLL PLLC**

Kit. A Pierson (D.C. Bar No. 398123)
S. Douglas Bunch (D.C. Bar No. 974054)
Sally Handmaker (D.C. Bar No. 1005414)
Julia Horwitz (D.C. Bar No. 1018561)
1100 New York Ave. NW
Suite 500, East Tower
Washington, DC 20005
(202) 408-4600
kpierson@cohenmilstein.com
dbunch@cohenmilstein.com
shandmaker@cohenmilstein.com
jhorwitz@cohenmilstein.com

- and -

Adam L. Hansen
(*pro hac vice* forthcoming)
**APOLLO LAW LLC**
400 S. 4th St.
Suite 401M - 250
Minneapolis, MN 55415
(612) 927-2969
adam@apollo-law.com

- and -

Kevin C. Riach
(*pro hac vice* forthcoming)

19

Benjamin R. Tozer
(*pro hac vice* forthcoming)
**FREDRIKSON & BYRON, P.A.**
200 S. Sixth St.
Suite 4000
Minneapolis, MN 55402
(612) 492-7000
kriach@fredlaw.com
btozer@fredlaw.com

- and -

Benjamin Casper Sanchez
(*pro hac vice* forthcoming)
Regina Jeffries
(*pro hac vice* forthcoming)
Linus Chan
(*pro hac vice* forthcoming)
**CENTER FOR NEW AMERICANS**
**UNIVERSITY OF MINNESOTA LAW**
**SCHOOL**
229 19th Ave. S.
Minneapolis, MN 55455
(612) 625-5515
caspe010@umn.edu
rjefferi@umn.edu
rlchan@umn.edu

- and -

John Keller
(*pro hac vice* forthcoming)
**IMMIGRANT LAW CENTER OF**
**MINNESOTA**
450 N. Syndicate St., Suite 200
St. Paul, MN 55104
(651) 641-1011
John.Keller@ilcm.org

- and -

Sarah Brenes
(*pro hac vice* forthcoming)

20

**THE ADVOCATES FOR HUMAN RIGHTS**
330 Second Ave. S., Suite 800
Minneapolis, MN 55401
(612) 341-3302
sbrenes@advrights.org

*Attorneys for Plaintiffs*